**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN HUSBAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 20-984 |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| IMS PRODUCTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Plaintiff, Kevin Husband, brought the present unlawful termination action against his former employer, Defendant, IMS Productions, Inc. (IMS).  (ECF No. 1).  IMS has filed a Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or in the alternative a Motion to Transfer Venue.  (ECF No. 8).  For the reasons stated below, the Court finds that it is in the interest of justice to transfer this action to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

## I.    BACKGROUND

Mr. Husband is a resident of Greensburg, Pennsylvania.  (ECF No. 1, ₱ 1).  He served as the Director of Satellite Communications Sales and Operations for IMS, which is an Indiana corporation headquartered in Indianapolis, Indiana.  (ECF No. 1, ₱₱ 2, 7).  IMS provides satellite communications services for sporting events across the country, which are then broadcasted on network television.  (ECF No. 1, ₱ 6; ECF No. 9, at 7).  Part of Mr. Husband's responsibilities at IMS included driving satellite communication trucks to various sporting events.  (ECF No. 1, ₱ 6).

Mr. Husband began his employment with IMS in July 2018, following the bankruptcy of his prior company, Calhoun Satellite Communications, Inc. (Calhoun), of which Mr. Husband was the President and one of three co-owners.  (ECF No. 12-1, ⁋ 4).  Calhoun was headquartered in Hunker, Pennsylvania, and provided subcontracting services to IMS prior to its bankruptcy. (ECF No. 12-1, ⁋ 4).  Like IMS, Calhoun provided satellite communication broadcasting services at large sporting events.  (ECF No. 13, at 10).  IMS acquired Calhoun's assets during the bankruptcy proceeding.  (ECF No. 13, at 10).  Mr. Husband avers that unless he became an employee of IMS, IMS would not have purchased Calhoun.[1]  (ECF No. 13, at 10).  The bankruptcy proceeding took place in the Bankruptcy Court of the Western District of Pennsylvania.  (ECF No. 13, at 10).  After IMS representatives traveled to the Western District of Pennsylvania to attend the bankruptcy court proceedings and inspect Calhoun's assets, the assets were then transported to IMS's headquarters in Indianapolis, Indiana.  (ECF No. 13, at 11).

While employed by IMS, Mr. Husband was permitted to work out of his home office in Greensburg, Pennsylvania.  (ECF No. 13, at 13).  Whenever Mr. Husband would drive a satellite communication truck for IMS, he would pick up the truck in Indianapolis and then drive to the jobsite.  (ECF No. 9, at 8).  Whenever Mr. Husband worked out of the IMS corporate office, he would use whatever spare office was available at the time.  (ECF No. 13, at 13).  Mr. Husband was the only Director who did not live and work in Indianapolis.  (ECF No. 13, at 13).

In his role as the Director of Satellite Communications Sales and Operations for IMS, Mr. Husband received several reports from other drivers that they were being told to drive longer hours than was permitted by Department of Transportation (DOT) Regulations.  (ECF No. 1, ⁋

---

[1] It is noted that the employment relationship between Mr. Husband and IMS was not an express condition of the corporate sale.  (ECF No. 12, Exhibit C).

7).  In September of 2019, Mr. Husband voiced these concerns to the President of IMS and subsequently filed a complaint with the DOT Federal Motor Carrier Safety Administration. (ECF No. 1, ¶¶ 8, 10).

A few weeks later, Mr. Husband was admitted to the hospital due to lethargy with cardiac palpitations and chest pain.  (ECF No. 1, ¶ 11).  While he was in the hospital, Mr. Husband received a brain MRI that revealed changes in his brain.  (ECF No. 1, ¶ 11).  After being discharged from the hospital, the President of IMS told Mr. Husband that he wasn't sure that he could come back to work because of his MRI results, which could be indicative of multiple sclerosis.  (ECF No. 1, ¶¶ 12, 13).  On Friday November 6, 2019, the IMS Senior Director of Broadcast Operations asked Mr. Husband if he was able to drive a truck to New York because of his potential diagnosis of multiple sclerosis.  (ECF No. 1, ¶ 17).  On the following Tuesday, Mr. Husband received a phone call from the President of IMS, notifying him that his employment was terminated.  (ECF No. 1, ¶ 18).

## II.    DISCUSSION

Although the Defendants argue in their Motion to Dismiss that the Court lacks personal jurisdiction and that this case was filed in the improper venue, district courts have discretion to decide convenience-based transfer questions before addressing jurisdictional inquiries.  *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018).  Thus, the Court will first consider whether this case should be transferred to the Southern District of Indiana, pursuant to section 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought."  In resolving this question, a court must consider, "all relevant factors to determine whether on balance the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district." *United States v. T.F.H. Publ'ns*, No. 2:10cv437, 2010 WL 4181151, at *2 (W.D. Pa. Oct. 20, 2010) (citing *Jumara*, 55 F.3d at 879).

There is no dispute that this action may have been brought in the Southern District of Indiana, and therefore venue in the proposed transferee district is proper. In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988), the Supreme Court explained "that section 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883 (3d Cir. 1995). In exercising the court's discretion, the court also considers the non-exhaustive[2] private and public factors enumerated by the United States Court of Appeals for the Third Circuit in *Jumara*. The private factors identified by the Third Circuit include the parties' preferences; where the claims arose; the convenience of the parties; the convenience of the witnesses, "but only to the extent that the witnesses may actually be unavailable for trail in one of the fora"; and the location of books and records, "similarly limited to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d 879. The public factors include the enforceability of the judgment; practical considerations that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; "the local interest in deciding local controversies at home"; the public policies of the fora; and the familiarity of the trial judge with

---

[2] In *Jumara*, the court specifically stated that "there is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at 879 (citing 1A PT. 2 JAMES W. MOORE & BRETT A. RINGLE, FEDERAL PRACTICE ¶ 0.345[5], at 4363 (2d ed. 1995)).

applicable state law in diversity cases.  *Id.*  After careful consideration of the *Jumara* factors to

the present case, the Court concludes that IMS has met its burden and that the interest of justice

is best served by transferring this case to the Southern District of Indiana.

Considering the parties' preferences, the factor that most favors Mr. Husband is that he

chose to file suit in this district.  "Ordinarily, a strong presumption of convenience exists in favor

of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the

balance of the public and private interests clearly favors an alternate forum."  *Windt v. Qwest*

*Comms. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008); *Jumara*, 55 F.3d at 879 ("Ordinarily, in a

§ 1404(a) analysis, the plaintiff's choice of forum is afforded substantial weight.").  The

plaintiff's choice of forum is also "given less weight when fewer of the operative facts took place

in that forum, and the defendant indicates a strong preference for another district."  *United States*

*v. Ohio Art Co.*, No. 10-230, 2010 WL 3155160, at *2 (W.D. Pa. July 20, 2010).

As for IMS, it has stated a strong preference that this case be transferred to the Southern

District of Indiana.  Significantly, the evidence presented to the Court at this time indicates that

nearly all of the operative facts took place in Indiana.  IMS's operations take place in Indiana and

the decision to fire Mr. Husband was made in Indiana.  Mr. Husband argues that he primarily

worked out of his home office in Pennsylvania; however, he still was a Director at a company

headquartered in Indiana, and his business address was at the Indiana location.  In fact, Mr.

Husband was the only Director who did not live and work in Indiana.  Additionally, whenever

Mr. Husband would be required to drive a satellite communication truck for IMS, he would

travel to Indiana, pick up the truck, and drive the vehicle to the jobsite.  These facts suggest that

the operative facts all primarily occurred in Indiana.  Although Mr. Husband places great weight

on the fact that his employment relationship with IMS stemmed from the purchase of Calhoun

Satellite Communications, Inc., which was located and headquartered in Pennsylvania, the purchase of that corporation is separate from the current claim, Mr. Husband's allegedly unlawful employment termination.  The employment relationship between Mr. Husband and IMS arose separate from the corporation asset purchase.  Further, Mr. Husband's employment centered around IMS's headquarters and business in Indianapolis, Indiana.  Thus, because most of the operative facts took place in Indiana, this factor weighs in favor of transferring this action to the Southern District of Indiana.

In addition, the Court agrees with IMS that the local interest in deciding local controversies at home, in this case, strongly favors transfer to Indiana.  As discussed above, the operative facts occurred in Indiana.  IMS is headquartered in Indiana and it made its decision to terminate Mr. Husband's employment from its headquarters in Indiana.  There is no doubt that the outcome of this action will have the greatest impact in Indiana.  Further, although not disposed of herein, there is substantial reason to question the existence of specific and/or general jurisdiction over this Defendant in Pennsylvania.  Therefore, should it be ultimately determined that there is no Pennsylvania jurisdiction, any judgment obtained may not be enforceable in Indiana.  Additionally, venue may also be improper in the Western District of Pennsylvania under the ADA's venue provisions.  Because of these outstanding questions of personal jurisdiction and venue and the fact that most of the operative facts centered around Indianapolis, Indiana, this factor also weighs in favor of transferring this case to the Southern District of Indiana.

Reviewing the remaining private and public factors, the Court does not discern that any of them alone or together carries sufficient weight in favor of either district.  Conversely, none of the remaining factors weigh against transfer.  Thus, the Court finds that all other factors are

either neutral or do not sufficiently outweigh the factors that strongly favor transfer, as identified above.

### III.    CONCLUSION

Based on the foregoing, the Court finds that IMS has met its burden of proving that venue is proper in Indiana, and that convenience and justice would be served by transferring the action. Accordingly, this action shall be transferred to the Southern District of Indiana forthwith.  The Court will deny as moot the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.  An appropriate Order shall be entered.

Date:  4/19/2021

Marilyn J. Horan
United States District Court Judge